# EXHIBIT 10



**Linda A. Goldstein**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4544
E-mail: lgoldstein@manatt.com

May 21, 2009

**BY E-MAIL**

Andrea C. Levine, Esq.
Vice President and Director
National Advertising Division
Council of Better Business Bureaus
70 West 36th Street
New York, NY 10018

      **Re:    Advertising for Priceline.com**

Dear Andrea:

      Further to our discussion, this is to confirm that our client, Expedia, Inc. ("Expedia") formally requested on May 20, 2009, that the NAD close the pending advertising challenge by Expedia against Priceline.com Incorporated ("Priceline"), because it is the subject of pending litigation. A copy of the complaint, which was filed by Expedia against Priceline on the same date in the United States District Court for the Western District of Washington, is enclosed. Please note that the exact same claims that are outlined in Expedia's NAD challenge are lodged against Priceline in the complaint.

      As you are aware, under Section 2.2.B.(i)(b) of the <u>NAD/NARB Procedures</u>, NAD "shall" administratively close matters in which claims within its jurisdiction become the subject of pending litigation:

> If, at the commencement or during the course of an advertising review proceeding, NAD/CARU concludes that the advertising claims complained of are ... the subject of pending litigation or an order by a court ... NAD/CARU shall advise the challenger that the complaint is not, or is no longer, appropriate for formal investigation in this forum. Upon making such a determination, NAD shall advise the challenger that a case will not be opened, or in the event that an advertising review proceeding has already been commenced, shall administratively close the case file and report this action in the Next issue of the Case Reports

<u>See, e.g., The Dannon Company, Inc./DanActive with L. Casei Immunitas</u>, NAD Case Report #4791 (February 2008)("Having confirmed that the challenged claims are now the subject of

7 Times Square, New York, New York 10036  Telephone: 212.790.4500 Fax: 212.790.4545

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.



**manatt**
manatt | phelps | phillips

Andrea C. Levine, Esq.
May 21, 2009
Page 2

pending litigation, NAD administratively closed the inquiry"); and The Evercare Company/Lint Rollers, NAD Case Report #4724 (September 2007)("During the pendency of the inquiry, the advertiser advised NAD of litigation that had commenced concerning the product and claims in question ... NAD administratively closed the inquiry").

Furthermore, NAD has administratively closed proceedings in the event that the challenger withdraws its complaint due to pending litigation concerning the claims at issue. For example, in North American Precis Syndicate, Inc./Article Writing & Placement Service, NAD Case Report #4908 (September 2008), the challenger informed NAD that the advertising claims that were at issue in the challenge were the subject of pending litigation. The challenger withdrew its complaint and requested NAD administratively close the case. NAD closed the inquiry, stating "In light of the fact that the advertising claims at issue are the subject of pending litigation, NAD determined that this matter was no longer appropriate for formal investigation in this forum." Id.

Accordingly, in light of the current proceeding before the U.S. District Court for the Western District of Washington, we request that NAD administratively close this proceeding to conserve its resources and avoid replicating efforts.

Please do not hesitate to call me if you wish to discuss this matter further.

Sincerely,

Linda A. Goldstein /ace

Linda A. Goldstein

LAG:ach

80450492.2

# EXHIBIT 11

*Case #5031*          *(06/08/09)*
**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
*Challenger:*          *Expedia, Inc. and Hotels.com*
*Product Type:*        *Website/Web Services*

**Basis of Inquiry:** Television and website advertising claims made by Priceline.com Incorporated ("the advertiser") for its hotel booking service were challenged by the online hotel booking services Expedia, Inc. and Hotels.com ("the challengers").

The challenged commercial opens with William Shatner's 'Negotiator' character peering over a man's office cubicle as the man looks at his computer monitor. "Name your own price, huh?" asks the Negotiator. The man responds, "Yeah, they want $200 for a four-star hotel on the Vegas strip. I'm going $190." The Negotiator responds, "Oh, you wuss." The man asks, "What?" "Go lower," says the negotiator. The man says, "$160." The negotiator taunts, "Nambi-pambi." The man says, "$99." "Now you're negotiating," says the Negotiator. A voiceover and on-screen copy then promise viewers "HALF PRICE HOTELS EVERY DAY." The voiceover then states, "save up to half off Expedia's best price and Hotels.com's best price," while on screen, a claim reads, "3-STAR HOTEL ORLANDO Expedia BEST PRICE $104," and then, "3-STAR HOTEL ORLANDO priceline $50." The text then changes to "3-STAR HOTEL SAN DIEGO Hotels.com BEST PRICE $155," followed by "3-STAR HOTEL SAN DIEGO priceline $75." A disclaimer at the bottom of the screen reads: "Priceline's Name Your Own Price service is different from Expedia and Hotels.com. Exact hotel shown only after purchase." Finally, the Priceline logo appears on screen and the announcer says, "Find half-price hotels every day at Priceline."

Also at issue is the home page of the Priceline website, which features the claim:

"FIND HALF PRICE HOTELS EVERY DAY"

Additionally the challenger took issue with a banner advertisement that appears at the top of the Name Your Own Price home page, which states:

"FIND HALF PRICE HOTELS EVERY DAY" The headline states: "FIND HALF PRICE HOTELS EVERY DAY*." A punching Negotiator is featured next to two price comparisons for hotels in Orlando and San Diego. The body copy states, "Half Price Hotels Anyone? These days, everyone's trying to 'out deal' the Negotiator. But when you're in the mood for a real hotel deal, the Negotiator has your back. He doesn't just throw you a deal scrap every now and then, he negotiates deeply discounted hotel deals that are up to half off the other guy's best price when you Name Your Own Price. These deals are available virtually every day of the year—whenever you need to travel." The website then features 16 "recent winning bids" using the Name Your Own Price Service and compares them to competitors' published prices. At the bottom of this price comparison chart appears a disclaimer that states, "Priceline's Name Your Own Price reservation service is different from fixed-price travel sites. With Priceline's Name Your Own Price reservation service, the exact hotel is shown only after purchase and sales are final. Name Your Own Price Hotel examples are for offers available on 9/24/08 thru 10/7/08 for check-in between 10/15/08 thru 1/13/09 and do not include applicable taxes and service fees. There is no guarantee that hotels or prices will be available. Actual prices and availability are always subject to change. All prices and dates may not be available at time of travel booking and savings are not guaranteed. Over the last 12 months, a substantial percentage of accepted offers have resulted in savings of up

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** to 50% in comparison to the lowest published rates on other leading
**Page 2**                                    online travel sites for the same itinerary."

### Challenger's Position:

*I.    Past NAD Decisions Regarding Priceline Advertising*

As background, the challenger noted NAD's 2003 Priceline.com decision, in which NAD found that Priceline had not adequately disclosed the differences between Priceline'e exclusive auction-bidding model for hotel bookings and the conventional booking methods that were available on other websites. Following the 2003 decision, Priceline added its own conventional booking system. Priceline now offers two online reservation services: (i) the name-your-own price system, and (ii) a conventional price-disclosed service. The latter service is similar to services offered by many other travel websites including Expedia and Hotels.com.

The challenger also noted a 2008 NAD decision in which Expedia challenged Priceline advertising that promised consumers "no fees" without disclosing that the offer applied only to booking through Priceline's retail airline booking service. NAD found that "because the two types of service offered by Priceline are distinctly different, any advertising making an offer that applies to only one of those services must clearly disclose that those claims are limited to that specific Priceline service."[1]

*II.    Presently Challenged Priceline Advertising*

The challenger argued that in the advertising challenged in this proceeding, Priceline again blurs the distinction between its "published price" conventional booking service and its name-your-own-price service. Although Priceline's advertising includes disclaimers that refer to the Name Your Own Price service, the challenger argued, the advertising employs language and graphics that clearly imply that the savings claims apply to all hotel bookings made on Priceline.com, including Priceline's conventional price-disclosed service. Thus, the challenger maintained that the commercial misleadingly implies that the savings apply to both Priceline services. The challenger noted that the commercial and website compare Priceline prices to fixed prices that are offered by other conventional booking services such as Expedia and Hotels.com. It argued that the commercial also implies that Priceline prices are also fixed prices.

The challenger noted that the challenged commercial and website also make the express claim that consumers can "find" half-price hotels every day at Priceline. The challenger argued that this statement is literally false, because consumers cannot "find" any hotel prices using Priceline's name-your-own-price service. Prices obtained by this service require the consumer to submit a bid. The challenger argued that the use of the word "find" further conveys the impression that the advertised savings also apply to Priceline's conventional booking service. The challenger also noted that the advertising refers repeatedly to "Priceline" in general, without distinguishing between its two services.

The challenger argued that the disclaimers used in Priceline advertising are inadequate to incorrect the misimpressions created by the commercial. The challenger noted NAD's 2008 Priceline

---

[1] *Priceline.com Incorporated (Priceline.com Online Travel Booking Service)*. Case # 4951, *NAD/CARU Case Reports* (December 2008).

Priceline.com Incorporated
Priceline.com Hotel Pricing decision, in which NAD found written disclosures to be "wholly
Page 3                        insufficient" to limit the applicability of the advertised offer to one
                              of Priceline's two services. NAD recommended that Priceline "set-
                              up the commercial to make it clear" which service is being
advertised.

The challenger disagreed with the advertiser's contention that Mr. Shatner's question, at the
beginning of the commercial, "Naming your own price, huh?" makes clear that the commercial
refers only to the bidding service. The challenger maintained that this is simply a question. Further,
it argued that the scene of the man in his cubicle bidding does not properly limit the claim.

III.    Challenger's              Consumer              Perception              Survey

As support for its position, the challenger submitted the results of a consumer perception survey
conducted by Dr. Itamar Simonson. The survey included 258 respondents who book hotels online,
and was it conducted in 12 areas of the country. The challenger noted that 59% of respondents said
that the advertised savings applied to all hotel reservations made through Priceline, compared with
only 13% who said they did not, and 27.5% who said they did not know. In addition, 45% of
respondents thought that there were no differences, other than price, between Priceline and other
travel sites, compared with only 27.5% who thought there were other differences. When asked
what the differences (other than price) were between Priceline and other travel sites, most of the
respondents (of the 27.5% who thought that there were differences other than price) still referred to
price aspects.

The challenger noted that NAD may have considered a disclaimer sufficient to disclose the
material differences between Priceline's name-your-own-price service and other websites'
conventional booking services available in 2003. However, the challenger maintained, in 2003,
Priceline only offered a name-your-own-price service. In light of the changes to Priceline's
business model, the challenger asserted, such a disclaimer is no longer sufficient. The challenger
maintained that Priceline's savings claims are line claims applying to both its name-your-own-
price service and its price-disclosed service.

The challenger disputed the advertiser's criticisms of its survey. It first addressed the argument that
respondents understood the term "Priceline" in Question 5 to mean Priceline's name-your-own-
price service, whereas they understood the term "Priceline" in Question 10 to refer to both
services. The challenger argued that if respondents had such a reversal of understanding during the
survey, at least some of them would have mentioned these differences in their answers—but none
did. Moreover, it argued, if respondents understood the "Priceline" in Question 5 to refer solely to
the name-your-own-price service, they would have mentioned the obvious differences between the
name-your-own-price service and other conventional services when asked. But none did. Second,
the challenger addressed the advertiser's criticism that Question 9 was flawed because there was
no "right" answer if respondents thought "Priceline" applied to both of Priceline's reservation
services. The challenger asserted that if the respondents understood the restrictions involved with
using the name-your-own-price service, they would have mentioned them. But none did. The
challenger also disagreed with the advertiser's arguments about the quality of the video. It further
disputed the advertiser's argument that the survey respondents were less likely to pay attention to
the super than consumers in real life. The challenger argued that the respondents were seated in a
small room a few feet away from the television set, and that they expected to be asked questions

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** about the commercial. Thus, the challenger argued, they were more
**Page 4** likely to notice the super in this setting.

The challenger also disputed the advertiser's assertion that open-ended Questions 1 and 2 reveal no evidence of confusion. In response to the advertiser's argument that respondents were not asked to which Priceline service the advertising applies, the challenger argued that such a question would have been leading. The challenger also disagreed with the advertiser's criticisms of the challenger's filter questions. The challenger argued that its filter questions were typical, appropriate, and that filter questions that "go to the issue" are relevant. The challenger also defended its' yes/no questions, arguing that in past cases, NAD did not object to the yes/no format as a rule. Finally, the challenger disputed the advertiser's emphasis on some verbatim responses that mention the ability to negotiate. It argued that the great majority of verbatim responses did not.

*IV.    "Up To" Savings Claims*

The challenger also argued that the advertiser's "Up To" savings claims are false and misleading. The commercial, for example, claims that consumers will "Save up to half-off Expedia's best price and Hotel.com's best price on over 16,000 hotels." The home page of the Priceline website and the Name Your Own Price hotels home page both expressly claim that consumers will "FIND HALF PRICE HOTELS EVERY DAY." It argued that these are unqualified claims, and are touted as "every day" prices, not a limited time sale. However, the challenger argued, these savings claims are not representative of actual consumer experience with Priceline compared to Expedia and Hotels.com. The half-off savings are not widely available to consumers, it argued.

The challenger contended that Priceline has not met its burden to prove that a "significant percentage" (10%) of its hotel prices are half the price of those offered by Expedia and Hotels.com. It further argued that Priceline has not met its burden to show that consumers can save fifty percent on hotel rates for comparable stays at a minimum of 10% of the hotels it offers in the Las Vegas strip, Orlando, and San Diego markets. The challenger also argued that Priceline has not substantiated its "half price" savings claims as they apply to comparable hotels for comparable lengths of stay during the same time period as compared to Expedia and Hotels.com. Finally, the challenger asserted that Priceline fails to demonstrate that the maximum advertised savings are available to a significant percentage of all consumers who placed bids for hotel rooms using the name-your-own-price service. It argued that this count should be determined not only according to those consumers whose bids were accepted, but rather on the basis of all consumers who submitted a bid on the Priceline website.

The challenger objected to the fact that the advertiser attempted to support its claims using confidentially submitted materials. It argued that Priceline failed to provide comprehensive summaries of these exhibits as required by NAD procedures. The challenger argued that many questions arise from the lack of transparency. For example, the challenger noted that Priceline's comparisons seem to be based on itineraries rather than on specific hotels. It also noted that the advertiser, in calculating the percentage of customers who saved 50% or more compared to Expedia, seemed to compare bookings rather than customers. It noted that customers can and frequently do make numerous bookings.

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** The challenger further objected to the advertiser's reliance on data
**Page 5**                          from its monitoring program—the methodology which NAD "vetted
                                    and approved" in its 2003 Priceline decision. The challenger noted
                                    that the currently challenged half-price savings claims relate to both
Priceline's disclosed-price service and its name-your-own-price service, whereas the 2003 case
related only to the latter. However, the challenger noted, the advertiser's support comes from a
comparison between (i) accepted customer bids from the name-your-own-price service; and (ii)
fixed prices offered by Expedia and Hotels.com. The challenger contended that simply because the
advertiser's name-your-own-price service comprises the "vast majority" of Priceline's hotel
bookings, this does not mean that Priceline can ignore its conventional booking service when
substantiating its claims.

The challenger also disputed the advertiser's methodology used to obtain price comparisons
between the competing websites. The challenger argued that Priceline's monitoring program "pulls
a random sample of customers who have booked a hotel through Name Your Own Price within the
past 24 hours," and sends that data to an independent research company that searches other leading
travel sites for the same itinerary "that same day." The challenger noted that this would mean that
the searches would be conducted one day after the Name Your Own Price customer booked his or
her stay. Because hotel booking are dynamic, argued the challenger, Priceline should support its
claims based on same-day bookings.

Additionally, the challenger asserted that the challenged advertising repeatedly makes the claim
"Half-Price Hotels Every Day," but fails to limit or qualify this claim. In fact, Priceline states,
"These deals are available virtually every day of the year—whenever you need to travel" on the
Name Your Own Price home page. The challenger maintained that it is misleading to make
absolute price savings claims without qualification because hotel prices are always changing.

Finally, after the record in this proceeding was closed, after NAD met with the parties, and shortly
before NAD's decision was issued, the challenger informed NAD for the first time that it had
elected to file a complaint against the advertiser in the United States District Court for the Western
District of Virginia. The challenger asked that NAD administratively close the present proceeding
because the claims were now the subject of pending litigation. The challenger noted Section 2.2.B.
(i)(b) of the NAD/CARU/NARB Procedures, which provides that NAD shall administratively
close matters in which claims within its jurisdiction become the subject of pending litigation.

**Advertiser's**                         **Position:**

*I.    Challenged Advertisements*

The advertiser argued that the context of the challenged commercial—which begins with a lengthy
scene showing a man using Priceline's Name Your Own Price service—makes clear that the
savings claims are about its Name Your Own Price service. The advertiser also noted an on-screen
super that states: "Priceline's Name Your Own Price service is different from Expedia and
Hotels.com Exact hotel shown only after purchase."

Likewise, the advertiser contended that the context of its website makes clear that the challenged
claims refer to its Name Your Own Price service. For example, the "Hotels" webpage on the
website states "Name your own price save up to 50% on hotels" on the left side. The claim is

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** followed by a short description of Name Your Own Price and a link,
**Page 6**                            called "how it works," that connects to a page with a more detailed
                                      description of the process and a video demonstrating a Name Your
                                      Own Price booking. To the right of the Name Your Own Price
section are examples of some winning bids. Above those bids is a button that says "FIND HALF
PRICE HOTELS EVERY DAY." By clicking on this button, the viewer arrives at the page
challenged by Expedia. The banner at the top of the page compares bids that were accepted by
Priceline to prices for Hotels.com in Orlando and Expedia in San Diego. Beneath these
comparisons is a button that says "name your own price" and a link to the video explaining how
this process works. In the middle of the page, there is a chart prefaced by the following
information: "Our Hotel Prices Are Just Better* Check out these recent winning bids by real Name
Your Own Price customers who saved big bucks over our competitor's published prices." The
chart lists several examples of recently accepted hotel bids versus competitive published prices.
The bottom of the page states: "*Priceline's Name Your Own Price reservation service is different
from fixed-price travel sites. With Priceline's Name Your Own Price reservation service, the exact
hotel is shown only after purchase and sales are final." This page appeared on Priceline's website
from October 15 through December 31, 2008. It is not currently in use, but similar comparisons
may be displayed in the future.

The advertiser contended that the commercial is "set up" to make clear that the claims refer to
Priceline's Name Your Own Price service—just as recommended by NAD's 2008 decision. The
very first line of the commercial specifically mentions "naming your own price." Next is an
enactment of how the Name Your Own Price service works. The advertiser maintained that the
commercial is clearly about bidding. Finally, the advertiser noted that the vast majority of
Priceline's hotel booking business consists of Name Your Own Price bookings. It added that this
service has been available for over a decade, and is well known among consumers. In any case, the
advertiser noted that the commercial contains a super to dispel any confusion. The advertiser
referred to three NAD compliance decisions following a previous Priceline decision, in which
NAD accepted Priceline's use of a super, making only limited recommendations on how to make
the super more clear and conspicuous. The advertiser argued that the super used in the presently
challenged commercial incorporates these past recommendations.

*II.*    *Substantiation*

The advertiser contended that its half-price savings claims are substantiated by a rigorous ongoing
monitoring program that determines what Priceline customers actually saved by booking their
hotels through its Name Your Own Price service. It argued that this program—which NAD
approved in a 2003 decision as support for a "Save up to 40%" on hotels claim—shows that Name
Your Own Price customers routinely pay half of what other travel sites would have charged for
their exact same hotel itineraries. The advertiser explained how its monitoring program works.
Every two to three days, on randomly selected days of the week, Priceline pulls a random sample
of customers who have booked a hotel through Name Your Own Price within the past 24 hours.
Each customer's itinerary—including the hotel, the dates, the length of stay—is sent to an
independent research company. That same day, the research company searches other leading travel
sites for the same itinerary and transmits the price information back to Priceline. In 2008, Priceline
compared more than 100,000 separate hotel bookings against Expedia and Hotels.com's best prices
for the same stay (as opposed to the "almost 5,400" it compared in 2003.)

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** The advertiser stated that its pricing data shows that Name Your
**Page 7**                          Own Price customers routinely save 50% or more on hotel bookings
                                    over what other online travel sites would have charged for the same
                                    itinerary on the same day. During the last quarter of 2008,
approximately 45% of 42,149 monitored Name Your Own Price customers saved 50% or more
over Expedia. Further, 46% of 37,245 monitored Expedia customers saved 50% or more.
Comparably high percentages of Name Your Own Price customers saved 50% or more versus
other travel sites monitored by Priceline.

The advertiser attempted to dispel the challenger's criticisms of its methodology. First, it argued
that sampling actual Name Your Own Price bookings is an appropriate way of confirming that the
maximum savings are actually achieved by an appreciable number of consumers in real life.
Indeed, this measure is far more consumer relevant than calculating how many items were offered
at the maximum savings. In any event, the advertiser contended that Priceline's bid acceptance rate
is extraordinarily high, so the vast majority of customers who use the Name Your Own Price
service are included in the universe from which Priceline draws its sample. Next, the advertiser
disputed the challenger's concern that the advertiser's data may be limited to off-peak travel
seasons and/or unpopular destinations. The advertiser maintained that the data is not limited. The
advertiser also contended that the city-specific claims featured in the challenged advertising are
based on actual Name Your Own Price bookings versus same-itinerary, same-day best prices on
competing websites.

The advertiser also objected to the challenger's contention that Priceline must also track
comparative data for its conventional booking service. The advertiser answered that the challenged
advertising relates exclusively to Priceline's Name Your Own Price option. Data relating to
Priceline's conventional booking service is therefore irrelevant. With respect to the challenger's
concern that the data is not based on "same day" comparisons, the advertiser answered that there is
no data to support the argument that published hotel rates fluctuate significantly from one day to
the next. In any case, the advertiser added, Priceline's competitive price checks are in fact
conducted on the same day that the Name Your Own Price bookings were made. Regarding the
challenger's concern about the limitations of the comparisons, the advertiser maintained that the
comparisons are not limited to off-peak travel times or unpopular destinations—nor are they
confined to a very limited number of hotels. Further, the advertiser disagreed with the challenger's
argument that Priceline's comparison requires proof of how many customers, rather than bookings,
obtained the maximum savings. Finally, the advertiser addressed the challenger's criticism that
Priceline's data fail to account for consumers who placed unsuccessful bids. The advertiser argued
that the challengers made this exact argument in the 2003 NAD proceeding, and the argument
failed.

*III.    Challenger's Consumer Perception Survey*

The advertiser criticized numerous aspects of the challenger's consumer perception survey. It
complained about poor video quality, suggesting that the super was more difficult to read than it
would have been in consumers' own homes. It noted Dr. Simonson's report which describes the
stimulus video as "good," or at least "not worse than" the quality of the small-scale commercials
available on the Priceline website. The advertiser further argued that the survey's two open-ended
questions revealed no evidence of consumer confusion. It contended that according to the survey
expert, the commercial's main messages are "superior savings" and "the ability to negotiate," both

Priceline.com Incorporated
Priceline.com Hotel Pricing of which the advertiser asserted are true. It argued that the lack of
Page 8                             discussion about the difference between the Name Your Own Price
                                   service and the published price model does not prove that no
                                   differences were communicated.

In addition, the advertiser objected to the failure of the survey to ever ask respondents which
Priceline service was advertised in the challenged commercial. The advertiser contended that
having just seen a commercial about Name Your Own Price, respondents likely understood that
Question 3, which mentions "Priceline," refers to the Name Your Own Price service. Given such
an understanding, there was no correct answer to choose from in the multiple choice answers for
Question 3. ("You may have already told me, but based just upon your review of the commercial,
does or doesn't this commercial communicate anything to you about the savings you would receive
if you book a hotel through Priceline?" "Yes, it does." "No, it doesn't." or "Don't know.") The
advertiser noted that, absent an answer choice that made a distinction between Priceline's Name
Your Own Price service and Priceline's fixed price service, respondents were likely to assume that
the question was about the Name Your Own Price service. Therefore, option # 1 would be the
correct answer. The advertiser noted other instances of ambiguity related to the term "Priceline" in
the survey questions. The advertiser argued that Questions 5 and 10 included ambiguous references
to "Priceline." It argued that "Priceline" in Question 5 seems intended as shorthand for Priceline's
Name Your Own Price option, whereas "Priceline" in Question 10 is meant to refer to both the
Name Your Own Price system and the fixed-price option.

The advertiser also took issue with the "filter questions" used in the challenger's survey. It argued
that filter questions are only supposed to identify, and "filter" out, respondents who took away no
message on a general topic to prevent them from guessing in response to subsequent questions
about the topic in dispute. The advertiser objected to the asking of "yes/no" questions that
specifically relate to the key issues in dispute, arguing that people who gave the answer desired by
the challengers are treated as confused and were not asked any open-ended questions.

Additionally, the advertiser contended that Question 5—a key question about whether Priceline is
different from other travel booking sites—was essentially a "trick" question. The advertiser argued
that the commercial's central message is that consumers can find the same hotels, in the same
locations, at the same star-levels, through Name Your Own Price as they can find on sites such as
Expedia and Hotels.com. The only "difference" between the hotels is that the Name Your Own
Price rates are much lower. Thus, the advertiser argued, many respondents would have assumed
that Question 5 was asking whether the commercial mentioned any difference other than price
between the hotels. "No" would have been the only correct answer.

Moreover, the advertiser noted that the results of Question 5 are quite different from the results of
Question 9, which specifically asked about the differences between "making a reservation" through
Priceline versus other travel booking sites. It added that Question 9 was flawed because, like
Questions 3, 5, and 10, if a respondent thought that "Priceline" referred to both the Name Your
Own Price option and the fixed price option, there was no "right" answer—an answer that the
survey results counted as indicating consumer confusion. Even so, the advertiser noted that the
percentage of respondents who answered "no" to Question 9 was so low (29%), that once the
control question (12%) is subtracted out, the results do not meet the 20% threshold that is typically
applied. Finally, the advertiser noted that verbatim answers to the survey's open-ended "main/other
ideas" questions were predominated by a discussion of "negotiating" and naming your own price.

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
Page 9                                   **Decision:**

Pursuant to Section 2.2.B(i)(b) of the NAD/CARU/NARB Procedures, NAD administratively closed this proceeding because the claims at issue are now the subject of pending litigation in the U.S. District Court for the Western District of Washington. However, given the full evidentiary record before NAD—the challenger's complaint was filed with the court significantly after the record before NAD was closed and shortly before a decision was issued—NAD believed it would be beneficial to share with the parties the analysis it would have conducted had procedural considerations not required an administrative closing. Further, in the event that the Western District of Washington chooses to stay the Priceline litigation in order to allow NAD to issue a decision on the merits—as was recently done by the Southern District of New York when a defendant and former NAD challenger moved for a 30-day stay to allow NAD to conclude its review process[2]—NAD noted its willingness to issue a decision on the merits. But unless and until the court "remands" the case to the self-regulatory system, NAD noted that its observations, set forth below, are dicta and thus not enforceable under NAD's compliance procedures.

I.       Takeaway Of Advertising

As a preliminary matter, NAD considered the takeaway of the challenged commercial—specifically whether it communicates a message about Priceline's Name Your Own Price service, or whether it makes a line claim about both of Priceline's services. NAD naturally looked to the consumer perception survey in the record, but was troubled by several aspects of this survey.

First, NAD was concerned about the ambiguity of several survey questions that refer to "Priceline." NAD has recognized that a survey can only "provide consistent and meaningful data" if the questions are "interpreted by all of the respondents in the same way."[3] NAD noted that the central question before NAD relates to whether consumers make a distinction between Priceline's Name Your Own Price service and its fixed price service. For this reason, NAD noted the importance of phrasing questions about "Priceline" in the most clear and unambiguous manner possible. NAD determined that several questions were not sufficiently clear, and could therefore lead to unreliable results.

For example, NAD noted the ambiguity in Question 10, which asks: "Does or doesn't this commercial communicate to you that the advertised savings apply to all hotel reservations made through Priceline?" NAD determined that, particularly after having watched a commercial that features the Name Your Own Price negotiation process, respondents may well have interpreted "Priceline" as a reference to the Name Your Own Price service. Interpreted as such, a "yes" answer would be correct. However, if respondents interpreted Priceline to refer to both the Name Your Own Price and fixed price services, a "yes" answer would indicate confusion. NAD noted that several other survey questions (such as Questions 3 and 5) also included ambiguous references to "Priceline." NAD concluded that this ambiguity renders the survey results of limited probative value in interpreting consumers' takeaway.

---

[2] *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F.Supp.2d 376 (S.D.N.Y. 2007)

[3] *See Visa USA, Inc. (Visa Credit Card Services)*, Case # 3426, *NAD/CARU Case Reports* (November 1997).

Priceline.com Incorporated
Priceline.com Hotel Pricing
Page 10                          NAD noted that this ambiguity was worsened by the survey's failure
                                 to ask respondents whether they understood the commercial to be
                                 about the Name Your Own Price service. Despite the repeated
ambiguous references to "Priceline," no survey question sought to tease out the distinction that
respondents did or did not make between Priceline's two services. As noted by the advertiser, the
survey might have asked how hotel prices are determined at Priceline, whether the commercial
discussed how hotels are booked, or whether the commercial contained references to bidding. By
not asking any questions on this point, NAD determined, the survey did not answer the question at
hand.

Additionally, NAD shared the advertiser's concerns about survey question 5, which asks about the
"differences, other than price, between Priceline and other online travel sites." NAD noted that the
commercial's central message is that consumers can find the same hotels, in the same locations, at
the same star-levels, through Name Your Own Price as they can find on sites such as Expedia and
Hotels.com. The only "difference" between the hotels is that the Name Your Own Price rates are
much lower. Thus, NAD was concerned that respondents would have assumed that Question 5 was
asking whether the commercial mentioned any difference other than price between the hotels.
Given this understanding, "no" would have been the only correct answer.

NAD further determined that the responses to the open-ended questions could not be used to gauge
whether consumers make a distinction between the two different booking services. Responses to
these "main message" and "other messages" questions show that the main takeaway relates to
"superior savings" and "the ability to negotiate." NAD disagreed with the challenger's contention
that the responses show "no indication" that respondents "made any distinction between" Name
Your Own Price and "other travel sites." NAD determined that the lack of discussion about the
distinction between the Name Your Own Price service and Priceline's fixed price service does not
demonstrate that consumers make no distinction between the two. Indeed, NAD noted, even if a
respondent understood the commercial to relate only to the Name Your Own Price service, he or
she would be unlikely to play this back in a "main message" question. NAD also shared the
advertiser's concerns regarding the questionable video quality. NAD noted the importance of using
a survey stimulus that matches the actual advertising in quality.

Having determined that the challenger's survey was not sufficiently reliable to demonstrate the
takeaway of the challenged commercial, NAD stepped into consumers' shoes to assess the
reasonable takeaway of the advertising. First and foremost, NAD considered the context of the
commercial. As described above, the commercial opens with William Shatner's 'Negotiator'
character peering over a man's office cubicle as the man looks at his computer monitor. "Name
your own price, huh?"[4] asks the Negotiator. The man responds, "Yeah, they want $200 for a four-
star hotel on the Vegas strip. I'm going $190." The Negotiator responds, "Oh, you wuss." The man
asks, "What?" "Go lower," says the negotiator. The man says, "$160." The negotiator taunts,
"Nambi-pambi." The man says, "$99." "Now you're negotiating," says the Negotiator. NAD
determined that this lengthy vignette makes clear that the commercial is an advertisement for
Priceline's Name Your Own Price service. NAD determined that this advertising was in keeping
with its 2008 Priceline decision which recommended that the advertiser "set up the commercial to
make it clear" which of the two services is being advertised. Here, the advertiser did "set up" its

---

[4] Although there was some dispute between the parties as to whether Shatner says "name your own price" or
"naming your own price," NAD's analysis on this point remains the same.

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
**Page 11**

commercial in such a way. Rather than using only a disclaimer to highlight the limitations of the claims, the advertiser designed the entire commercial to be about the Name Your Own Price service.

Thus, although the parties disagreed about the clarity and conspicuousness of the disclaimer, NAD found that the disclaimer was not nearly as essential as it had been in the advertising it reviewed in the 2008 Priceline proceeding. In the 2008 proceeding, NAD found that the advertiser must disclose, in a more clear and conspicuous manner, that the advertising at issue in that proceeding applied to only one of Priceline's two services. The advertising at issue in the present proceeding, however, is quite different. As stated above, NAD concluded that the commercial now challenged by Expedia and Hotels.com is "set up" to be about the Name Your Own Price service. Therefore, although NAD did question the clarity and conspicuousness of the disclaimer, NAD noted that the context of the commercial was far more clear than that at issue in 2008.

Further, NAD was not persuaded by the challenger's arguments that (i) the use of the word "find" refers to fixed prices rather than negotiated prices; or that (ii) the mere comparison of Priceline's prices to fixed-price competitors suggests that Priceline's advertised prices are also fixed in nature.

NAD also considered the claims made on the Priceline website. The challenger took issue with a website claim that states: "FIND HALF PRICE HOTELS EVERY DAY" that was featured both on the Priceline home page and on the Name Your Own Price hotels home page. NAD noted that the advertiser's website had been modified since the commencement of this proceeding, but that it did have some concerns about the claim as it appeared on the Priceline home page as captured in the challenger's initial letter to NAD. NAD questioned whether the "HALF PRICE HOTELS EVERY DAY" claim on that page was sufficiently limited to the Name Your Own Price service. However, based on a recent review of the Priceline homepage, NAD noted that the homepage had been changed such that the "HALF PRICE HOTELS EVERY DAY" claim no longer appears. Had NAD issued a decision on the merits, it would have likely noted that this revision of the homepage was appropriate.

II.    Substantiation

NAD next considered whether the advertiser supported the communicated savings claims for its Name Your Own Price service. The advertiser provided (proprietary) data that compared, during the last quarter of 2008, the prices of 42,149 Name Your Own Price bookings against Expedia's prices for those same itineraries. Approximately 45% of Name Your Own Price customers saved 50% or more over Expedia. Further, the data showed that of the 37,245 hotel bookings that Priceline checked against Hotels.com during that period, approximately 46% of customers saved 50% or more. It also showed that comparably high percentages of Name Your Own Price customers saved 50% or more versus the other travel sites that Priceline monitors.

Although this proprietary data was submitted to NAD on a confidential basis, NAD carefully examined the data with the challenger's stated concerns in mind. For example, NAD noted that the advertiser's data was not limited to particular markets or particular periods of time. NAD also noted the data provided for the individual locations referenced in the commercial (the Las Vegas strip, San Diego, and Orlando.) NAD was not persuaded by the challenger's various objections to this data. For example, NAD found that the advertiser was reasonable to base its claim on the universe of bookings rather than customers. Moreover, NAD noted that the challenger's criticisms

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** of the advertiser's data were largely the same as those raised—and
**Page 12**                                       rejected by NAD—during a 2003 proceeding.

                         Based on the analysis above, NAD would have concluded—had a
complaint not been filed with the court shortly before its decision was issued—that the advertiser
had a reasonable basis for its claims.

**Conclusion:**

Pursuant to Section 2.2.B(i)(b) of the <u>NAD/CARU/NARB Procedures</u>, NAD administratively
closed this proceeding because the claims at issue are now the subject of pending litigation.
However, NAD noted for the record its willingness to reopen the case and reformat the foregoing
analysis as a decision on the merits, should the court remand the matter to NAD or for other
reasons not reach a conclusion on the truthfulness and accuracy of the challenged claims. **(#5031
JF, closed 06/08/2009)**

© 2009. Council of Better Business Bureaus, Inc.

# EXHIBIT 12



manatt | phelps | phillips

**Jeffrey S. Edelstein**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4533
Direct Fax: (212) 536-1808
E-mail: lgoldstein@manatt.com

June 17, 2009

Andrea C. Levine, Esq.
Vice President and Director
National Advertising Division
Council of Better Business Bureaus, Inc.
70 West 36 Street
13th Floor
New York, NY 10018

Dear Andrea:

On behalf of Expedia, Inc. and Hotels.com, we hereby request that NAD immediately rescind the case report dated June 8, 2009, administratively closing the proceeding, and issue a revised case report which complies with the NAD Procedures. The case report is unprecedented and unwarranted for an administrative closing, and is in violation of the NAD Procedures.

Pursuant to Section 2.2.B(i)b) of the NAD Procedures, NAD administratively closed this proceeding because the claims at issue are now the subject of pending litigation in the U.S. District Court for the Western District of Washington. That section states that "If, . . . during the course of an advertising review proceeding, NAD concludes that the advertising claims complained of are . . . the subject of pending litigation or an order by a court, . . . NAD shall advise the challenger that the complaint is . . . no longer appropriate for formal investigation in this forum. Upon making such a determination, NAD, . . . in the event than an advertising review proceeding has already been commenced, shall administratively close the case file and report this action in the next issue of the Case Reports."

Although it was appropriate for NAD to administratively close the proceeding under that section, it was totally inappropriate for NAD to blatantly violate its own procedures and discuss in the case report its "analysis" of the issues. The only section of the NAD Procedures which authorizes NAD to make a decision in a case is Section 2.9. which provides for NAD to "formulate its decision on the truth and accuracy of the claims at issue." That section was not reached in this case because the proceeding was administratively closed pursuant to Section 2.2.B(i)b). Thus, since no provision of the NAD Procedures authorizes NAD to "formulate its decision on the truth and accuracy of the claims at issue" when administratively closing a case, NAD had absolutely no authority to issue its lengthy opinion discussing its view of the merits of the challenge.

While we understand that NAD may have been unhappy that Expedia and Hotels.com decided to bring a lawsuit after NAD had already expended time and resources to examine the

7 Times Square, New York, New York 10036  Telephone: 212.790.4500 Fax: 212.790.4545

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.



**manatt**

manatt | phelps | phillips

Andrea C. Levine
June 17, 2009
Page 2

challenged advertising, that does not justify NAD's unprecedented violation of its own
procedures. The choice to institute a lawsuit, like the choice to participate in a NAD proceeding,
properly belongs to the challenger, and neither Expedia nor Hotels.com should be treated
unfairly simply because they decided to turn to an alternative forum to hear their arguments.
Indeed, there is absolutely no reason for NAD to provide its views on an administratively closed
challenge unless it hopes to influence the court which will be hearing the case. NAD even
acknowledges as much in its case report as it states, prior to providing its detailed analysis, that if
the Western District of Washington chooses to stay the Priceline litigation in order to allow NAD
to issue a decision on the merits, "NAD noted its willingness to issue a decision on the merits.
But unless and until the court 'remands' the case to the self-regulatory system, NAD noted that
its observations, set forth below, are dicta and thus not enforceable under NAD's compliance
procedures."

We have reviewed other case reports issued by NAD in administratively closing
proceedings, and have found none in which NAD provided its analysis of the issues in the case,
as here. The case reports routinely issued by NAD when administratively closing cases briefly
summarize the claims at issue and the parties' positions, and state the basis for the closing. This
case report is without precedent and completely unwarranted.

We request that NAD rescind this case report and issue a new case report which complies
with the <u>NAD Procedures</u>.

Sincerely,

Jeff Edelstein /rw

Jeffrey S. Edelstein

cc:     Lee Peeler, Esq., President, National Advertising Review Council
        Jennifer Fried, Esq., NAD

80452547.1

# EXHIBIT 13



manatt | phelps | phillips

**Jeffrey S. Edelstein**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4533
E-mail: jedelstein@manatt.com

**Linda A. Goldstein**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4544
E-mail: lgoldstein@manatt.com

July 8, 2009

**BY E-MAIL**

Steven J. Cole, Esq.
President and CEO
Council of Better Business Bureaus
4200 Wilson Boulevard, Suite 800
Arlington, VA 22203-1838

      Re:    **Advertising by Priceline.com**

Dear Steve:

      On behalf of Expedia, Inc. and Hotels.com, we hereby request that the Council of Better Business Bureaus immediately rescind the NAD case report dated June 8, 2009, administratively closing the above-referenced proceeding as a result of pending litigation, and instruct NAD to issue a revised case report which complies with the NAD Procedures. A copy of the case report is attached. The lengthy and detailed case report is unprecedented and unwarranted for an administrative closing, and is in violation of the NAD Procedures, specifically Section 2.2B(i)(b).

      After receiving the case report, we submitted the attached letter dated June 17, 2009 to Andrea Levine on behalf of our clients, requesting that NAD rescind the decision. Although we have not received a formal response, we have spoken to Andrea about this and understand that NAD has rejected our request.

      The grounds for our request are discussed in the attached letter and will not be repeated here. Suffice it to say that it is unprecedented and a violation of the NAD Procedures for NAD to issue a lengthy opinion discussing its views of the merits of a challenge in a case report administratively closing a proceeding. No provision of the NAD Procedures authorizes NAD to formulate its decision on the truth and accuracy of the claims at issue when administratively closing a case. Moreover, since NAD was not recommending that the advertising be modified or discontinued in any way, there was no public interest to be served through the issuance of this report, other than to potentially impact the current litigation. This is contrary to the letter and spirit of the NAD Procedures which mandate that a case be administratively closed when the claims at issue in the NAD challenge become the subject of litigation.

7 Times Square, New York, New York 10036  Telephone: 212.790.4500 Fax: 212.790.4545

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.



Steven J. Cole, Esq.
July 8, 2009
Page 2

Expedia and Hotels.com have participated in many NAD proceedings, and have always abided by the NAD Procedures. They reasonably expect NAD to abide by its own procedures. For NAD not do so for undermines the credibility of the self-regulatory system. It sends a message that NAD does not take its own procedures seriously, and encourages other parties to flout the NAD Procedures. By weakening public respect for the self-regulatory system, the case report sets a bad precedent and could reduce the voluntary cooperation with the NAD process that the self-regulation system depends on.

As discussed in the attached letter, we understand that NAD may have been unhappy that Expedia and Hotels.com decided to bring a lawsuit after NAD had expended time and resources to examine the challenged Priceline advertising. However, the choice to institute a lawsuit, like the choice to participate in a NAD proceeding, properly belongs to the challenger. It was unwarranted for NAD to treat Expedia and Hotels.com unfairly because they decided to turn to an alternative forum to hear their arguments about Priceline's advertising.

We request that the Council of Better Business Bureaus rescind this case report and instruct NAD to issue a new case report which complies with the NAD Procedures.

Sincerely,

*Jeffrey S. Edelstein*

Jeffrey S. Edelstein

*Linda A. Goldstein/ric*

Linda A. Goldstein

cc:    Lee Peeler, Esq., President, National Advertising Review Council
       Andrea C. Levine, Vice President and Director, NAD

80453138.1



**manatt**

manatt | phelps | phillips

Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4533
Direct Fax: (212) 536-1808
E-mail: lgoldstein@manatt.com

June 17, 2009

Andrea C. Levine, Esq.
Vice President and Director
National Advertising Division
Council of Better Business Bureaus, Inc.
70 West 36 Street
13th Floor
New York, NY 10018

Dear Andrea:

On behalf of Expedia, Inc. and Hotels.com, we hereby request that NAD immediately rescind the case report dated June 8, 2009, administratively closing the proceeding, and issue a revised case report which complies with the <u>NAD Procedures</u>. The case report is unprecedented and unwarranted for an administrative closing, and is in violation of the <u>NAD Procedures</u>.

Pursuant to Section 2.2.B(i)b) of the <u>NAD Procedures</u>, NAD administratively closed this proceeding because the claims at issue are now the subject of pending litigation in the U.S. District Court for the Western District of Washington. That section states that "If, . . . during the course of an advertising review proceeding, NAD concludes that the advertising claims complained of are . . . the subject of pending litigation or an order by a court, . . . NAD shall advise the challenger that the complaint is . . . no longer appropriate for formal investigation in this forum. Upon making such a determination, NAD, . . . in the event than an advertising review proceeding has already been commenced, shall administratively close the case file and report this action in the next issue of the Case Reports."

Although it was appropriate for NAD to administratively close the proceeding under that section, it was totally inappropriate for NAD to blatantly violate its own procedures and discuss in the case report its "analysis" of the issues. The only section of the <u>NAD Procedures</u> which authorizes NAD to make a decision in a case is Section 2.9. which provides for NAD to "formulate its decision on the truth and accuracy of the claims at issue." That section was not reached in this case because the proceeding was administratively closed pursuant to Section 2.2.B(i)b). Thus, since no provision of the NAD Procedures authorizes NAD to "formulate its decision on the truth and accuracy of the claims at issue" when administratively closing a case, NAD had absolutely no authority to issue its lengthy opinion discussing its view of the merits of the challenge.

While we understand that NAD may have been unhappy that Expedia and Hotels.com decided to bring a lawsuit after NAD had already expended time and resources to examine the



**manatt**
manatt | phelps | phillips

Andrea C. Levine
June 17, 2009
Page 2

challenged advertising, that does not justify NAD's unprecedented violation of its own procedures. The choice to institute a lawsuit, like the choice to participate in a NAD proceeding, properly belongs to the challenger, and neither Expedia nor Hotels.com should be treated unfairly simply because they decided to turn to an alternative forum to hear their arguments. Indeed, there is absolutely no reason for NAD to provide its views on an administratively closed challenge unless it hopes to influence the court which will be hearing the case. NAD even acknowledges as much in its case report as it states, prior to providing its detailed analysis, that if the Western District of Washington chooses to stay the Priceline litigation in order to allow NAD to issue a decision on the merits, "NAD noted its willingness to issue a decision on the merits. But unless and until the court 'remands' the case to the self-regulatory system, NAD noted that its observations, set forth below, are dicta and thus not enforceable under NAD's compliance procedures."

We have reviewed other case reports issued by NAD in administratively closing proceedings, and have found none in which NAD provided its analysis of the issues in the case, as here. The case reports routinely issued by NAD when administratively closing cases briefly summarize the claims at issue and the parties' positions, and state the basis for the closing. This case report is without precedent and completely unwarranted.

We request that NAD rescind this case report and issue a new case report which complies with the <u>NAD Procedures</u>.

Sincerely,

*Jeff Edelstein /rw*

Jeffrey S. Edelstein

cc:    Lee Peeler, Esq., President, National Advertising Review Council
       Jennifer Fried, Esq., NAD

80452547.1

*Case #5031*        *(06/08/09)*
**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
*Challenger:*        *Expedia, Inc. and Hotels.com*
*Product Type:*      *Website/Web Services*

**Basis of Inquiry:** Television and website advertising claims made by Priceline.com Incorporated ("the advertiser") for its hotel booking service were challenged by the online hotel booking services Expedia, Inc. and Hotels.com ("the challengers").

The challenged commercial opens with William Shatner's 'Negotiator' character peering over a man's office cubicle as the man looks at his computer monitor. "Name your own price, huh?" asks the Negotiator. The man responds, "Yeah, they want $200 for a four-star hotel on the Vegas strip. I'm going $190." The Negotiator responds, "Oh, you wuss." The man asks, "What?" "Go lower," says the negotiator. The man says, "$160." The negotiator taunts, "Nambi-pambi." The man says, "$99." "Now you're negotiating," says the Negotiator. A voiceover and on-screen copy then promise viewers "HALF PRICE HOTELS EVERY DAY." The voiceover then states, "save up to half off Expedia's best price and Hotels.com's best price," while on screen, a claim reads, "3-STAR HOTEL ORLANDO Expedia BEST PRICE $104," and then, "3-STAR HOTEL ORLANDO priceline $50." The text then changes to "3-STAR HOTEL SAN DIEGO Hotels.com BEST PRICE $155," followed by "3-STAR HOTEL SAN DIEGO priceline $75." A disclaimer at the bottom of the screen reads: "Priceline's Name Your Own Price service is different from Expedia and Hotels.com. Exact hotel shown only after purchase." Finally, the Priceline logo appears on screen and the announcer says, "Find half-price hotels every day at Priceline."

Also at issue is the home page of the Priceline website, which features the claim:

"FIND HALF PRICE HOTELS EVERY DAY"

Additionally the challenger took issue with a banner advertisement that appears at the top of the Name Your Own Price home page, which states:

"FIND HALF PRICE HOTELS EVERY DAY" The headline states: "FIND HALF PRICE HOTELS EVERY DAY*." A punching Negotiator is featured next to two price comparisons for hotels in Orlando and San Diego. The body copy states, "Half Price Hotels Anyone? These days, everyone's trying to 'out deal' the Negotiator. But when you're in the mood for a real hotel deal, the Negotiator has your back. He doesn't just throw you a deal scrap every now and then, he negotiates deeply discounted hotel deals that are up to half off the other guy's best price when you Name Your Own Price. These deals are available virtually every day of the year—whenever you need to travel." The website then features 16 "recent winning bids" using the Name Your Own Price Service and compares them to competitors' published prices. At the bottom of this price comparison chart appears a disclaimer that states, "Priceline's Name Your Own Price reservation service is different from fixed-price travel sites. With Priceline's Name Your Own Price reservation service, the exact hotel is shown only after purchase and sales are final. Name Your Own Price Hotel examples are for offers available on 9/24/08 thru 10/7/08 for check-in between 10/15/08 thru 1/13/09 and do not include applicable taxes and service fees. There is no guarantee that hotels or prices will be available. Actual prices and availability are always subject to change. All prices and dates may not be available at time of travel booking and savings are not guaranteed. Over the last 12 months, a substantial percentage of accepted offers have resulted in savings of up

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** to 50% in comparison to the lowest published rates on other leading
**Page 2**                          online travel sites for the same itinerary."

### Challenger's Position:

*I.*    *Past NAD Decisions Regarding Priceline Advertising*

As background, the challenger noted NAD's 2003 Priceline.com decision, in which NAD found that Priceline had not adequately disclosed the differences between Priceline'e exclusive auction-bidding model for hotel bookings and the conventional booking methods that were available on other websites. Following the 2003 decision, Priceline added its own conventional booking system. Priceline now offers two online reservation services: (i) the name-your-own price system, and (ii) a conventional price-disclosed service. The latter service is similar to services offered by many other travel websites including Expedia and Hotels.com.

The challenger also noted a 2008 NAD decision in which Expedia challenged Priceline advertising that promised consumers "no fees" without disclosing that the offer applied only to booking through Priceline's retail airline booking service. NAD found that "because the two types of service offered by Priceline are distinctly different, any advertising making an offer that applies to only one of those services must clearly disclose that those claims are limited to that specific Priceline service."[1]

*II.*    *Presently Challenged Priceline Advertising*

The challenger argued that in the advertising challenged in this proceeding, Priceline again blurs the distinction between its "published price" conventional booking service and its name-your-own-price service. Although Priceline's advertising includes disclaimers that refer to the Name Your Own Price service, the challenger argued, the advertising employs language and graphics that clearly imply that the savings claims apply to all hotel bookings made on Priceline.com, including Priceline's conventional price-disclosed service. Thus, the challenger maintained that the commercial misleadingly implies that the savings apply to both Priceline services. The challenger noted that the commercial and website compare Priceline prices to fixed prices that are offered by other conventional booking services such as Expedia and Hotels.com. It argued that the commercial also implies that Priceline prices are also fixed prices.

The challenger noted that the challenged commercial and website also make the express claim that consumers can "find" half-price hotels every day at Priceline. The challenger argued that this statement is literally false, because consumers cannot "find" any hotel prices using Priceline's name-your-own-price service. Prices obtained by this service require the consumer to submit a bid. The challenger argued that the use of the word "find" further conveys the impression that the advertised savings also apply to Priceline's conventional booking service. The challenger also noted that the advertising refers repeatedly to "Priceline" in general, without distinguishing between its two services.

The challenger argued that the disclaimers used in Priceline advertising are inadequate to incorrect the misimpressions created by the commercial. The challenger noted NAD's 2008 Priceline

---

[1] *Priceline.com Incorporated (Priceline.com Online Travel Booking Service)*, Case # 4951, *NAD/CARU Case Reports* (December 2008).

Priceline.com Incorporated
Priceline.com Hotel Pricing decision, in which NAD found written disclosures to be "wholly
Page 3                          insufficient" to limit the applicability of the advertised offer to one
                                of Priceline's two services. NAD recommended that Priceline "set-
                                up the commercial to make it clear" which service is being
advertised.

The challenger disagreed with the advertiser's contention that Mr. Shatner's question, at the
beginning of the commercial, "Naming your own price, huh?" makes clear that the commercial
refers only to the bidding service. The challenger maintained that this is simply a question. Further,
it argued that the scene of the man in his cubicle bidding does not properly limit the claim.

III.    Challenger's                Consumer                Perception                Survey

As support for its position, the challenger submitted the results of a consumer perception survey
conducted by Dr. Itamar Simonson. The survey included 258 respondents who book hotels online,
and was it conducted in 12 areas of the country. The challenger noted that 59% of respondents said
that the advertised savings applied to all hotel reservations made through Priceline, compared with
only 13% who said they did not, and 27.5% who said they did not know. In addition, 45% of
respondents thought that there were no differences, other than price, between Priceline and other
travel sites, compared with only 27.5% who thought there were other differences. When asked
what the differences (other than price) were between Priceline and other travel sites, most of the
respondents (of the 27.5% who thought that there were differences other than price) still referred to
price aspects.

The challenger noted that NAD may have considered a disclaimer sufficient to disclose the
material differences between Priceline's name-your-own-price service and other websites'
conventional booking services available in 2003. However, the challenger maintained, in 2003,
Priceline only offered a name-your-own-price service. In light of the changes to Priceline's
business model, the challenger asserted, such a disclaimer is no longer sufficient. The challenger
maintained that Priceline's savings claims are line claims applying to both its name-your-own-
price service and its price-disclosed service.

The challenger disputed the advertiser's criticisms of its survey. It first addressed the argument that
respondents understood the term "Priceline" in Question 5 to mean Priceline's name-your-own-
price service, whereas they understood the term "Priceline" in Question 10 to refer to both
services. The challenger argued that if respondents had such a reversal of understanding during the
survey, at least some of them would have mentioned these differences in their answers—but none
did. Moreover, it argued, if respondents understood the "Priceline" in Question 5 to refer solely to
the name-your-own-price service, they would have mentioned the obvious differences between the
name-your-own-price service and other conventional services when asked. But none did. Second,
the challenger addressed the advertiser's criticism that Question 9 was flawed because there was
no "right" answer if respondents thought "Priceline" applied to both of Priceline's reservation
services. The challenger asserted that if the respondents understood the restrictions involved with
using the name-your-own-price service, they would have mentioned them. But none did. The
challenger also disagreed with the advertiser's arguments about the quality of the video. It further
disputed the advertiser's argument that the survey respondents were less likely to pay attention to
the super than consumers in real life. The challenger argued that the respondents were seated in a
small room a few feet away from the television set, and that they expected to be asked questions

Priceline.com Incorporated
Priceline.com Hotel Pricing about the commercial. Thus, the challenger argued, they were more
Page 4                            likely to notice the super in this setting.

           The challenger also disputed the advertiser's assertion that open-
ended Questions 1 and 2 reveal no evidence of confusion. In response to the advertiser's argument
that respondents were not asked to which Priceline service the advertising applies, the challenger
argued that such a question would have been leading. The challenger also disagreed with the
advertiser's criticisms of the challenger's filter questions. The challenger argued that its filter
questions were typical, appropriate, and that filter questions that "go to the issue" are relevant. The
challenger also defended its' yes/no questions, arguing that in past cases, NAD did not object to
the yes/no format as a rule. Finally, the challenger disputed the advertiser's emphasis on some
verbatim responses that mention the ability to negotiate. It argued that the great majority of
verbatim responses did not.

*IV.*    *"Up To" Savings Claims*

The challenger also argued that the advertiser's "Up To" savings claims are false and misleading.
The commercial, for example, claims that consumers will "Save up to half-off Expedia's best price
and Hotel.com's best price on over 16,000 hotels." The home page of the Priceline website and the
Name Your Own Price hotels home page both expressly claim that consumers will "FIND HALF
PRICE HOTELS EVERY DAY." It argued that these are unqualified claims, and are touted as
"every day" prices, not a limited time sale. However, the challenger argued, these savings claims
are not representative of actual consumer experience with Priceline compared to Expedia and
Hotels.com. The half-off savings are not widely available to consumers, it argued.

The challenger contended that Priceline has not met its burden to prove that a "significant
percentage" (10%) of its hotel prices are half the price of those offered by Expedia and
Hotels.com. It further argued that Priceline has not met its burden to show that consumers can save
fifty percent on hotel rates for comparable stays at a minimum of 10% of the hotels it offers in the
Las Vegas strip, Orlando, and San Diego markets. The challenger also argued that Priceline has not
substantiated its "half price" savings claims as they apply to comparable hotels for comparable
lengths of stay during the same time period as compared to Expedia and Hotels.com. Finally, the
challenger asserted that Priceline fails to demonstrate that the maximum advertised savings are
available to a significant percentage of all consumers who placed bids for hotel rooms using the
name-your-own-price service. It argued that this count should be determined not only according to
those consumers whose bids were accepted, but rather on the basis of all consumers who submitted
a bid on the Priceline website.

The challenger objected to the fact that the advertiser attempted to support its claims using
confidentially submitted materials. It argued that Priceline failed to provide comprehensive
summaries of these exhibits as required by NAD procedures. The challenger argued that many
questions arise from the lack of transparency. For example, the challenger noted that Priceline's
comparisons seem to be based on itineraries rather than on specific hotels. It also noted that the
advertiser, in calculating the percentage of customers who saved 50% or more compared to
Expedia, seemed to compare bookings rather than customers. It noted that customers can and
frequently do make numerous bookings.

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
**Page 5**

The challenger further objected to the advertiser's reliance on data from its monitoring program—the methodology which NAD "vetted and approved" in its 2003 Priceline decision. The challenger noted that the currently challenged half-price savings claims relate to both Priceline's disclosed-price service and its name-your-own-price service, whereas the 2003 case related only to the latter. However, the challenger noted, the advertiser's support comes from a comparison between (i) accepted customer bids from the name-your-own-price service; and (ii) fixed prices offered by Expedia and Hotels.com. The challenger contended that simply because the advertiser's name-your-own-price service comprises the "vast majority" of Priceline's hotel bookings, this does not mean that Priceline can ignore its conventional booking service when substantiating its claims.

The challenger also disputed the advertiser's methodology used to obtain price comparisons between the competing websites. The challenger argued that Priceline's monitoring program "pulls a random sample of customers who have booked a hotel through Name Your Own Price within the past 24 hours," and sends that data to an independent research company that searches other leading travel sites for the same itinerary "that same day." The challenger noted that this would mean that the searches would be conducted one day after the Name Your Own Price customer booked his or her stay. Because hotel booking are dynamic, argued the challenger, Priceline should support its claims based on same-day bookings.

Additionally, the challenger asserted that the challenged advertising repeatedly makes the claim "Half-Price Hotels Every Day," but fails to limit or qualify this claim. In fact, Priceline states, "These deals are available virtually every day of the year—whenever you need to travel" on the Name Your Own Price home page. The challenger maintained that it is misleading to make absolute price savings claims without qualification because hotel prices are always changing.

Finally, after the record in this proceeding was closed, after NAD met with the parties, and shortly before NAD's decision was issued, the challenger informed NAD for the first time that it had elected to file a complaint against the advertiser in the United States District Court for the Western District of Virginia. The challenger asked that NAD administratively close the present proceeding because the claims were now the subject of pending litigation. The challenger noted Section 2.2.B. (i)(b) of the NAD/CARU/NARB Procedures, which provides that NAD shall administratively close matters in which claims within its jurisdiction become the subject of pending litigation.

**Advertiser's**                                    **Position:**

*I.    Challenged Advertisements*

The advertiser argued that the context of the challenged commercial—which begins with a lengthy scene showing a man using Priceline's Name Your Own Price service—makes clear that the savings claims are about its Name Your Own Price service. The advertiser also noted an on-screen super that states: "Priceline's Name Your Own Price service is different from Expedia and Hotels.com Exact hotel shown only after purchase."

Likewise, the advertiser contended that the context of its website makes clear that the challenged claims refer to its Name Your Own Price service. For example, the "Hotels" webpage on the website states "Name your own price save up to 50% on hotels" on the left side. The claim is

**Priceline.com Incorporated**

**Priceline.com Hotel Pricing** followed by a short description of Name Your Own Price and a link,
**Page 6**                                    called "how it works," that connects to a page with a more detailed
                                              description of the process and a video demonstrating a Name Your
                                              Own Price booking. To the right of the Name Your Own Price
section are examples of some winning bids. Above those bids is a button that says "FIND HALF
PRICE HOTELS EVERY DAY." By clicking on this button, the viewer arrives at the page
challenged by Expedia. The banner at the top of the page compares bids that were accepted by
Priceline to prices for Hotels.com in Orlando and Expedia in San Diego. Beneath these
comparisons is a button that says "name your own price" and a link to the video explaining how
this process works. In the middle of the page, there is a chart prefaced by the following
information: "Our Hotel Prices Are Just Better* Check out these recent winning bids by real Name
Your Own Price customers who saved big bucks over our competitor's published prices." The
chart lists several examples of recently accepted hotel bids versus competitive published prices.
The bottom of the page states: "*Priceline's Name Your Own Price reservation service is different
from fixed-price travel sites. With Priceline's Name Your Own Price reservation service, the exact
hotel is shown only after purchase and sales are final." This page appeared on Priceline's website
from October 15 through December 31, 2008. It is not currently in use, but similar comparisons
may be displayed in the future.

The advertiser contended that the commercial is "set up" to make clear that the claims refer to
Priceline's Name Your Own Price service—just as recommended by NAD's 2008 decision. The
very first line of the commercial specifically mentions "naming your own price." Next is an
enactment of how the Name Your Own Price service works. The advertiser maintained that the
commercial is clearly about bidding. Finally, the advertiser noted that the vast majority of
Priceline's hotel booking business consists of Name Your Own Price bookings. It added that this
service has been available for over a decade, and is well known among consumers. In any case, the
advertiser noted that the commercial contains a super to dispel any confusion. The advertiser
referred to three NAD compliance decisions following a previous Priceline decision, in which
NAD accepted Priceline's use of a super, making only limited recommendations on how to make
the super more clear and conspicuous. The advertiser argued that the super used in the presently
challenged commercial incorporates these past recommendations.

## II.    Substantiation

The advertiser contended that its half-price savings claims are substantiated by a rigorous ongoing
monitoring program that determines what Priceline customers actually saved by booking their
hotels through its Name Your Own Price service. It argued that this program—which NAD
approved in a 2003 decision as support for a "Save up to 40%" on hotels claim—shows that Name
Your Own Price customers routinely pay half of what other travel sites would have charged for
their exact same hotel itineraries. The advertiser explained how its monitoring program works.
Every two to three days, on randomly selected days of the week, Priceline pulls a random sample
of customers who have booked a hotel through Name Your Own Price within the past 24 hours.
Each customer's itinerary—including the hotel, the dates, the length of stay—is sent to an
independent research company. That same day, the research company searches other leading travel
sites for the same itinerary and transmits the price information back to Priceline. In 2008, Priceline
compared more than 100,000 separate hotel bookings against Expedia and Hotels.com's best prices
for the same stay (as opposed to the "almost 5,400" it compared in 2003.)

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
**Page 7**

The advertiser stated that its pricing data shows that Name Your Own Price customers routinely save 50% or more on hotel bookings over what other online travel sites would have charged for the same itinerary on the same day. During the last quarter of 2008, approximately 45% of 42,149 monitored Name Your Own Price customers save 50% or more over Expedia. Further, 46% of 37,245 monitored Expedia customers saved 50% or more. Comparably high percentages of Name Your Own Price customers saved 50% or more versus other travel sites monitored by Priceline.

The advertiser attempted to dispel the challenger's criticisms of its methodology. First, it argued that sampling actual Name Your Own Price bookings is an appropriate way of confirming that the maximum savings are actually achieved by an appreciable number of consumers in real life. Indeed, this measure is far more consumer relevant than calculating how many items were offered at the maximum savings. In any event, the advertiser contended that Priceline's bid acceptance rate is extraordinarily high, so the vast majority of customers who use the Name Your Own Price service are included in the universe from which Priceline draws its sample. Next, the advertiser disputed the challenger's concern that the advertiser's data may be limited to off-peak travel seasons and/or unpopular destinations. The advertiser maintained that the data is not limited. The advertiser also contended that the city-specific claims featured in the challenged advertising are based on actual Name Your Own Price bookings versus same-itinerary, same-day best prices on competing websites.

The advertiser also objected to the challenger's contention that Priceline must also track comparative data for its conventional booking service. The advertiser answered that the challenged advertising relates exclusively to Priceline's Name Your Own Price option. Data relating to Priceline's conventional booking service is therefore irrelevant. With respect to the challenger's concern that the data is not based on "same day" comparisons, the advertiser answered that there is no data to support the argument that published hotel rates fluctuate significantly from one day to the next. In any case, the advertiser added, Priceline's competitive price checks are in fact conducted on the same day that the Name Your Own Price bookings were made. Regarding the challenger's concern about the limitations of the comparisons, the advertiser maintained that the comparisons are not limited to off-peak travel times or unpopular destinations—nor are they confined to a very limited number of hotels. Further, the advertiser disagreed with the challenger's argument that Priceline's comparison requires proof of how many customers, rather than bookings, obtained the maximum savings. Finally, the advertiser addressed the challenger's criticism that Priceline's data fail to account for consumers who placed unsuccessful bids. The advertiser argued that the challengers made this exact argument in the 2003 NAD proceeding, and the argument failed.

III.     *Challenger's Consumer Perception Survey*

The advertiser criticized numerous aspects of the challenger's consumer perception survey. It complained about poor video quality, suggesting that the super was more difficult to read than it would have been in consumers' own homes. It noted Dr. Simonson's report which describes the stimulus video as "good," or at least "not worse than" the quality of the small-scale commercials available on the Priceline website. The advertiser further argued that the survey's two open-ended questions revealed no evidence of consumer confusion. It contended that according to the survey expert, the commercial's main messages are "superior savings" and "the ability to negotiate," both

Priceline.com Incorporated
Priceline.com Hotel Pricing of which the advertiser asserted are true. It argued that the lack of
Page 8                        discussion about the difference between the Name Your Own Price
                              service and the published price model does not prove that no
                              differences were communicated.

In addition, the advertiser objected to the failure of the survey to ever ask respondents which
Priceline service was advertised in the challenged commercial. The advertiser contended that
having just seen a commercial about Name Your Own Price, respondents likely understood that
Question 3, which mentions "Priceline," refers to the Name Your Own Price service. Given such
an understanding, there was no correct answer to choose from in the multiple choice answers for
Question 3. ("You may have already told me, but based just upon your review of the commercial,
does or doesn't this commercial communicate anything to you about the savings you would receive
if you book a hotel through Priceline?" "Yes, it does." "No, it doesn't." or "Don't know.") The
advertiser noted that, absent an answer choice that made a distinction between Priceline's Name
Your Own Price service and Priceline's fixed price service, respondents were likely to assume that
the question was about the Name Your Own Price service. Therefore, option # 1 would be the
correct answer. The advertiser noted other instances of ambiguity related to the term "Priceline" in
the survey questions. The advertiser argued that Questions 5 and 10 included ambiguous references
to "Priceline." It argued that "Priceline" in Question 5 seems intended as shorthand for Priceline's
Name Your Own Price option, whereas "Priceline" in Question 10 is meant to refer to both the
Name Your Own Price system and the fixed-price option.

The advertiser also took issue with the "filter questions" used in the challenger's survey. It argued
that filter questions are only supposed to identify, and "filter" out, respondents who took away no
message on a general topic to prevent them from guessing in response to subsequent questions
about the topic in dispute. The advertiser objected to the asking of "yes/no" questions that
specifically relate to the key issues in dispute, arguing that people who gave the answer desired by
the challengers are treated as confused and were not asked any open-ended questions.

Additionally, the advertiser contended that Question 5—a key question about whether Priceline is
different from other travel booking sites—was essentially a "trick" question. The advertiser argued
that the commercial's central message is that consumers can find the same hotels, in the same
locations, at the same star-levels, through Name Your Own Price as they can find on sites such as
Expedia and Hotels.com. The only "difference" between the hotels is that the Name Your Own
Price rates are much lower. Thus, the advertiser argued, many respondents would have assumed
that Question 5 was asking whether the commercial mentioned any difference other than price
between the hotels. "No" would have been the only correct answer.

Moreover, the advertiser noted that the results of Question 5 are quite different from the results of
Question 9, which specifically asked about the differences between "making a reservation" through
Priceline versus other travel booking sites. It added that Question 9 was flawed because, like
Questions 3, 5, and 10, if a respondent thought that "Priceline" referred to both the Name Your
Own Price option and the fixed price option, there was no "right" answer—an answer that the
survey results counted as indicating consumer confusion. Even so, the advertiser noted that the
percentage of respondents who answered "no" to Question 9 was so low (29%), that once the
control question (12%) is subtracted out, the results do not meet the 20% threshold that is typically
applied. Finally, the advertiser noted that verbatim answers to the survey's open-ended "main/other
ideas" questions were predominated by a discussion of "negotiating" and naming your own price.

Priceline.com Incorporated
Priceline.com Hotel Pricing
Page 9                        Decision:

Pursuant to Section 2.2.B(i)(b) of the <u>NAD/CARU/NARB</u>
<u>Procedures</u>, NAD administratively closed this proceeding because the claims at issue are now the
subject of pending litigation in the U.S. District Court for the Western District of Washington.
However, given the full evidentiary record before NAD—the challenger's complaint was filed with
the court significantly after the record before NAD was closed and shortly before a decision was
issued—NAD believed it would be beneficial to share with the parties the analysis it would have
conducted had procedural considerations not required an administrative closing. Further, in the
event that the Western District of Washington chooses to stay the Priceline litigation in order to
allow NAD to issue a decision on the merits—as was recently done by the Southern District of
New York when a defendant and former NAD challenger moved for a 30-day stay to allow NAD
to conclude its review process[2]—NAD noted its willingness to issue a decision on the merits. But
unless and until the court "remands" the case to the self-regulatory system, NAD noted that its
observations, set forth below, are dicta and thus not enforceable under NAD's compliance
procedures.

I.      Takeaway Of Advertising

As a preliminary matter, NAD considered the takeaway of the challenged commercial—
specifically whether it communicates a message about Priceline's Name Your Own Price service,
or whether it makes a line claim about both of Priceline's services. NAD naturally looked to the
consumer perception survey in the record, but was troubled by several aspects of this survey.

First, NAD was concerned about the ambiguity of several survey questions that refer to
"Priceline." NAD has recognized that a survey can only "provide consistent and meaningful data"
if the questions are "interpreted by all of the respondents in the same way."[3] NAD noted that the
central question before NAD relates to whether consumers make a distinction between Priceline's
Name Your Own Price service and its fixed price service. For this reason, NAD noted the
importance of phrasing questions about "Priceline" in the most clear and unambiguous manner
possible. NAD determined that several questions were not sufficiently clear, and could therefore
lead to unreliable results.

For example, NAD noted the ambiguity in Question 10, which asks: "Does or doesn't this
commercial communicate to you that the advertised savings apply to all hotel reservations made
through Priceline?" NAD determined that, particularly after having watched a commercial that
features the Name Your Own Price negotiation process, respondents may well have interpreted
"Priceline" as a reference to the Name Your Own Price service. Interpreted as such, a "yes" answer
would be correct. However, if respondents interpreted Priceline to refer to both the Name Your
Own Price and fixed price services, a "yes" answer would indicate confusion. NAD noted that
several other survey questions (such as Questions 3 and 5) also included ambiguous references to
"Priceline." NAD concluded that this ambiguity renders the survey results of limited probative
value in interpreting consumers' takeaway.

---

[2] *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F.Supp.2d 376 (S.D.N.Y.
2007)

[3] *See Visa USA, Inc. (Visa Credit Card Services)*, Case # 3426, *NAD/CARU Case Reports* (November 1997).

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing**
Page 10                        NAD noted that this ambiguity was worsened by the survey's failure
                               to ask respondents whether they understood the commercial to be
                               about the Name Your Own Price service. Despite the repeated
ambiguous references to "Priceline," no survey question sought to tease out the distinction that
respondents did or did not make between Priceline's two services. As noted by the advertiser, the
survey might have asked how hotel prices are determined at Priceline, whether the commercial
discussed how hotels are booked, or whether the commercial contained references to bidding. By
not asking any questions on this point, NAD determined, the survey did not answer the question at
hand.

Additionally, NAD shared the advertiser's concerns about survey question 5, which asks about the
"differences, other than price, between Priceline and other online travel sites." NAD noted that the
commercial's central message is that consumers can find the same hotels, in the same locations, at
the same star-levels, through Name Your Own Price as they can find on sites such as Expedia and
Hotels.com. The only "difference" between the hotels is that the Name Your Own Price rates are
much lower. Thus, NAD was concerned that respondents would have assumed that Question 5 was
asking whether the commercial mentioned any difference other than price between the hotels.
Given this understanding, "no" would have been the only correct answer.

NAD further determined that the responses to the open-ended questions could not be used to gauge
whether consumers make a distinction between the two different booking services. Responses to
these "main message" and "other messages" questions show that the main takeaway relates to
"superior savings" and "the ability to negotiate." NAD disagreed with the challenger's contention
that the responses show "no indication" that respondents "made any distinction between" Name
Your Own Price and "other travel sites." NAD determined that the lack of discussion about the
distinction between the Name Your Own Price service and Priceline's fixed price service does not
demonstrate that consumers make no distinction between the two. Indeed, NAD noted, even if a
respondent understood the commercial to relate only to the Name Your Own Price service, he or
she would be unlikely to play this back in a "main message" question. NAD also shared the
advertiser's concerns regarding the questionable video quality. NAD noted the importance of using
a survey stimulus that matches the actual advertising in quality.

Having determined that the challenger's survey was not sufficiently reliable to demonstrate the
takeaway of the challenged commercial, NAD stepped into consumers' shoes to assess the
reasonable takeaway of the advertising. First and foremost, NAD considered the context of the
commercial. As described above, the commercial opens with William Shatner's 'Negotiator'
character peering over a man's office cubicle as the man looks at his computer monitor. "Name
your own price, huh?"[4] asks the Negotiator. The man responds, "Yeah, they want $200 for a four-
star hotel on the Vegas strip. I'm going $190." The Negotiator responds, "Oh, you wuss." The man
asks, "What?" "Go lower," says the negotiator. The man says, "$160." The negotiator taunts,
"Nambi-pambi." The man says, "$99." "Now you're negotiating," says the Negotiator. NAD
determined that this lengthy vignette makes clear that the commercial is an advertisement for
Priceline's Name Your Own Price service. NAD determined that this advertising was in keeping
with its 2008 Priceline decision which recommended that the advertiser "set up the commercial to
make it clear" which of the two services is being advertised. Here, the advertiser did "set up" its

---

[4] Although there was some dispute between the parties as to whether Shatner says "name your own price" or
"*naming* your own price," NAD's analysis on this point remains the same.

Priceline.com Incorporated
Priceline.com Hotel Pricing commercial in such a way. Rather than using only a disclaimer to
Page 11                 highlight the limitations of the claims, the advertiser designed the
                        entire commercial to be about the Name Your Own Price service.

Thus, although the parties disagreed about the clarity and conspicuousness of the disclaimer, NAD
found that the disclaimer was not nearly as essential as it had been in the advertising it reviewed in
the 2008 Priceline proceeding. In the 2008 proceeding, NAD found that the advertiser must
disclose, in a more clear and conspicuous manner, that the advertising at issue in that proceeding
applied to only one of Priceline's two services. The advertising at issue in the present proceeding,
however, is quite different. As stated above, NAD concluded that the commercial now challenged
by Expedia and Hotels.com is "set up" to be about the Name Your Own Price service. Therefore,
although NAD did question the clarity and conspicuousness of the disclaimer, NAD noted that the
context of the commercial was far more clear than that at issue in 2008.

Further, NAD was not persuaded by the challenger's arguments that (i) the use of the word "find"
refers to fixed prices rather than negotiated prices; or that (ii) the mere comparison of Priceline's
prices to fixed-price competitors suggests that Priceline's advertised prices are also fixed in nature.

NAD also considered the claims made on the Priceline website. The challenger took issue with a
website claim that states: "FIND HALF PRICE HOTELS EVERY DAY" that was featured both
on the Priceline home page and on the Name Your Own Price hotels home page. NAD noted that
the advertiser's website had been modified since the commencement of this proceeding, but that it
did have some concerns about the claim as it appeared on the Priceline home page as captured in
the challenger's initial letter to NAD. NAD questioned whether the "HALF PRICE HOTELS
EVERY DAY" claim on that page was sufficiently limited to the Name Your Own Price service.
However, based on a recent review of the Priceline homepage, NAD noted that the homepage had
been changed such that the "HALF PRICE HOTELS EVERY DAY" claim no longer appears. Had
NAD issued a decision on the merits, it would have likely noted that this revision of the homepage
was appropriate.

II.    Substantiation

NAD next considered whether the advertiser supported the communicated savings claims for its
Name Your Own Price service. The advertiser provided (proprietary) data that compared, during
the last quarter of 2008, the prices of 42,149 Name Your Own Price bookings against Expedia's
prices for those same itineraries. Approximately 45% of Name Your Own Price customers saved
50% or more over Expedia. Further, the data showed that of the 37,245 hotel bookings that
Priceline checked against Hotels.com during that period, approximately 46% of customers saved
50% or more. It also showed that comparably high percentages of Name Your Own Price
customers saved 50% or more versus the other travel sites that Priceline monitors.

Although this proprietary data was submitted to NAD on a confidential basis, NAD carefully
examined the data with the challenger's stated concerns in mind. For example, NAD noted that the
advertiser's data was not limited to particular markets or particular periods of time. NAD also
noted the data provided for the individual locations referenced in the commercial (the Las Vegas
strip, San Diego, and Orlando.) NAD was not persuaded by the challenger's various objections to
this data. For example, NAD found that the advertiser was reasonable to base its claim on the
universe of bookings rather than customers. Moreover, NAD noted that the challenger's criticisms

**Priceline.com Incorporated**
**Priceline.com Hotel Pricing** of the advertiser's data were largely the same as those raised—and
**Page 12**                                    rejected by NAD—during a 2003 proceeding.

Based on the analysis above, NAD would have concluded—had a complaint not been filed with the court shortly before its decision was issued—that the advertiser had a reasonable basis for its claims.

**Conclusion:**

Pursuant to Section 2.2.B(i)(b) of the NAD/CARU/NARB Procedures, NAD administratively closed this proceeding because the claims at issue are now the subject of pending litigation. However, NAD noted for the record its willingness to reopen the case and reformat the foregoing analysis as a decision on the merits, should the court remand the matter to NAD or for other reasons not reach a conclusion on the truthfulness and accuracy of the challenged claims. **(#5031 JF, closed 06/08/2009)**

© 2009. Council of Better Business Bureaus, Inc.

# EXHIBIT 14



**bbb.org**  August 5, 2009

Linda A. Goldstein, Esquire          Jeffrey S. Edelstein, Esquire
Manatt, Phelps & Phillips, LLP       Manatt, Phelps & Phillips, LLP
7 Times Square                        7 Times Square
New York, NY 10036                   New York, NY 10036

Dear Linda and Jeff:

Thank you for your letter July 8, 2009 expressing your concerns about the NAD's handling of
Expedia's challenge to advertising by Priceline (NAD Case #5031). Your letter states that you
view the NAD's action as a violation of its Polices and Procedures and ask that the Council of
Better Business Bureaus rescind the NAD report on this matter.

My understanding is that this challenge was initiated in January 2009. The advertiser
voluntarily agreed to participate and the process proceeded for four months through the
completion of all filings and meetings by both parties with the NAD in April and early May
2009. Around May 20, 2009, Expedia notified the NAD that a lawsuit had been filed and
requested that your NAD challenge be administratively closed. NAD did administratively
close the challenge and in doing so issued a report sharing the "analysis it would have
conducted had procedural considerations not required administrative closing of the case", an
analysis it characterized as "dicta". That report was transmitted to both parties and has been
filed by the defendant in the pending litigation.

I have reviewed this matter and do not believe NAD's actions violated the NAD Policies and
Procedures. Nonetheless, your letter and this case point to the ambiguity of the NAD Policies
and Procedures on this question and the need for clearer guidance to the NAD and to the
parties about their obligations when a case has been filed, argued and imminently pending
decision. I intend to discuss with the NARC Board the possible amendment or clarification of
NAD Policies and Procedures with respect to this issue.

I appreciate your bringing your concerns to my attention.

Sincerely,

Steven J. Cole
President and Chief Executive Officer

**COUNCIL OF BETTER BUSINESS BUREAUS, INC.**
4200 Wilson Boulevard. Suite 800 · Arlington, VA 22203-1838 · Phone: 703.276.0100 · Fax: 703.276.0634